## TAX COMMISSION v SELTZER

Ohio Appeals, 5th Dist, Richland Co

Decided November 25, 1931

Gilbert Bettman, Atty. General, and William J. Ford and Carlton S. Dargusch, Columbus, for plaintiff in error.

Charles A. Anderson, Shelby, and A. B. Mabee, Mansfield, for defendants in error.

MONTGOMERY, J.

The question to be decided in this case is a question of fact, and whether the facts, as disclosed by this record, are such as to bring this case within the rule as laid down in the Parker case.

Counsel for defendants in error attempt to distinguish the two, and, as authority therefor, cite two cases, to-wit: **Burton, executor, v Tax Commission of Ohio, 37 Oh Ap, 183,** and In the Matter of the Estate of Donnell, 28 N. P., (N. S.), 211. A careful consideration of these two cases is justified, but the dissimilarity between the facts in each of them, and the facts in the Parker case and the case at bar, will be apparent.

In the Burton case, the gifts in controversy had come to the donor from her father-in-law, who had died shortly prior thereto, and the donor. shortly after receiving these bequests from her father-in-law, turned them over to her children and others, whom she regarded as the proper beneficiaries of her father-in-law. The court states in its opinion on page 186: "It is patent also that, while the donor apprehended that the title to her father-in-law's bequest, had, as a matter of law, vested in her, she, as far as she was personally concerned, did not consider this bequest as a part of her own estate."

The court says that this donor exercised over this property only such authority as was necessary to transfer the securities to her transferees; that at the time of the death of her father-in-law she was in the east, and that upon her return she immediately endorsed the securities over to her transferees. The court in the Burton case on page 187 says:

"The facts in the Parker case are wholly dissimilar to those in the instant case, and

it is our opinion that the case at bar is an ideal case presenting facts conclusively rebutting the presumption that the gifts involved were made in contemplation of death."

In the Donnell case, the record shows that the husband of the donor had left a large estate; that his widow, who was the donor in that case, dissatisfied with the will, elected to take under the law, and transferred a substantial part of what she so took to her step-son, who was the own son of her testator. The court, in the Donnell case, also distinguished it from the Parker case in this language, as shown on page 216 of the opinion:

"The instant case is further disinguished from the Parker case in that the donee was not the donor's own child and could not take any part of the estate as an heir. That the gift here was made to right a wrong and in consideration of the present needs of the donee, and not 'in contemplation of death,' clearly an act of generosity and the donor's expression of appreciation of a devoted (step) son."

In the Donnell case the court further finds that the donor made no general distribution of her property at the time of this transfer, but was simply attempting to do what she regarded as an act of justice, giving to her step-son what she believed should have been given to him by his father.

In our judgment, the facts in the instant case are not at all similar to the facts in the Burton case, or the Donnell case. They are very similar to the facts in the Parker case.

The gifts to the three children were in the same proportion as the residium left to them, and in fact the amount transferred to each of these three was more than one-third of the amount left under the will to each of them.

It is claimed that the basis of the transfer was a sense of obligation to the son, John, and an act of generosity to the others, who were in debt. However, the son, John, had, at his father's instance, expended four thousand dollars in an addition to a home, and had made a change in business with problematical financial consequences. The other son had an indebtedness of a few thousand dollars, the exact amount not appearing in the record. The daughter had, as far as the record shows, an obligation of one thousand dollars. To compensate the son, John, or to relieve the others from their indebtedness, would not have required anything like $31,250 for any one of them.

So far as the record shows, this decedent never made a will until June, 1928, at which time he was presumably 78 years of age. Seven months thereafter he makes this partial distribution, just in accordance with the manner in which these three transferees would have taken under the will. Under these circumstances, what is the presumption as to whether or not the transfers were made in contemplation of death? When does a man contemplate death? At the age of 79 he must certainly begin at least to contemplate it. In the language of the Psalmist:

"The days of our years are three score years and ten; and if by reason of strength they be fourscore years, yet is their strength labor and sorrow; for it is soon cut off, and we fly away."

That this decedent must have realized this fact is evidenced by the execution of his will in June, 1928, when so far as the record discloses, he had never, prior thereto, executed any will, and the transfer of this amount of stock, of such value, under the circumstances detailed, seems to us clearly to show that the transfer was in contemplation of death.

The statue, §5332-2, says that a transfer, "made within two years prior to the death of the transferor, shall, unless shown to the contrary, be determined to have been made in contemplation of death," etc.

The burden is clearly cast upon the donees to rebut the presumption. Have they done so in this case? We think not. In our judgment the finding of the Court of Common Pleas is clearly and manifestly against the weight of the evidence; indeed, there was an utter failure, in our judgment, on the part of the donees to rebut the presumption fixed by statute, and it follows that the judgment of the Court of Common Pleas must be and the same is hereby reversed.

Following the procedure adopted by the Court of Appeals in the Burton case, and which, in turn, is based upon the decision of the Supreme Court of Ohio in the case of **Bridgeport Bank Co. v Shadyside Coal Co., 121 Oh St, 54,** this case is remanded to the Court of Common Pleas of Richland, county, Ohio, for a new trial.

Exceptions may be noted.

SHERICK, PJ, and LEMERT, J, concur.